CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

EVAN M. MATEER (CABN 326848)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Evan.mateer@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO. 4:25-MJ-71222-MAG** |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN** |
| v. | |
| DAVID BROOKS POKORNY, | |
| Defendant. | |

## INTRODUCTION

On September 2, 2025 Defendant David Brooks Pokorny sent 11 emails to the media email address for the Northern District of California where he proclaimed himself to be a terrorist and threatened to kill a judge of this Court. The next week, Pokorny threatened to kill the mayor of Oakland. Pokorny's violent threats present a present danger to the community that cannot be mitigated by any set of conditions. Nor can conditions ensure that Pokorny, who has no ties to this district and was living in a hotel at the time of this offense, will appear for these proceedings. Pokorny must be detained pending trial.

1

## BACKGROUND

On September 2, 2025, Pokorny sent a series of emails in which he described himself as a terrorist and threatened to kill a United States District Judge by skinning him alive.[1]  Pokorny claimed the right to do this because judges had made themselves "enemy combatants" through their rulings.  On September 7, Pokorny continued his course of conduct, making racist threats against the Mayor of Oakland, California, resulting in state felony charges.

### A.  On September 2, 2025, Pokorny threatened to kill a United States District Judge

On September 2, 2025, at approximately 12:50 pm, the United States Marshals Service (USMS) received a report from the Clerk of the United States District Court for the Northern District of California regarding concerning emails received by the Clerk's office.  The emails were sent to the media email address for the United States District Court for the Northern District of California, media@cand.uscourts.gov.  The Clerk's office reported that between 11:33 a.m. and 12:07 p.m. the media email address received a total of 11 emails from an email address dbpokorny@gmail.com.  The Clerk's office reported that the emails contained threatening language, including against members of the Court.

The first several emails declared that "[t]his is terrorism" and threatened to "kill a hostage" if there was no reply to the message.  The sixth email turned the threats to a particular target, reading "I want you to visualize skinning US District Judge Charles Breyer to death."  In the seventh email, Pokorny explained the purpose and motivation for his threats in detail.  He described having a "concrete plan to use terrorist to control courts and judges" which "involves taking & killing hostages."  Pokorny declared that he had a "legal right to do this because California courts & judges rule in favor of godless socialists" and that judges that become "commanders of enemy forces[.]"  Pokorny declared that it was "legal to take & kill hostages in order to get the illegitimate California courts & judges to cease their operations and dissolve their courts."  Specifically, Pokorny declared that "US District Judge Charles

---

[1] This memo lays out the offense conduct in summary form.  For detailed description of the factual allegations against Pokorny, *see* Affidavit in Support of Criminal Complaint, Dkt. 1.

Breyer is an enemy combatant" because he had done "something very stupid, and that is to militarize the court."  Pokorny said that he was "happy to spill your blood" and had the "legal right to spill your blood."  He concluded by declaring "I am a terrorist, and I'm happy to spill your blood. Spilling the blood of tyrants like you feels good. It feels real good :-)."

Pokorny continued his threats in an eighth and ninth emails, stating "Reply to this message or we skin US District Judge Charles Breyer. We'll skin him, take pictures, and send you the pictures" and that he wanted the reader to "visualize skinning US District Judge Charles Breyer."  Pokorny reiterated that he had "a legal right to skin US District Judge Charles Breyer . . . because the California courts are no longer legitimate and have turned themselves into legitimate military targets. It is legal according to the rules of war to capture enemy combatants & skin them."  In his final email, Pokorny said that "We are organizing a new California government. The mass killing of the godless socialist police officers & judges will continue until they have been pacified and obey us and the Will of God. The California judges & police officers fucked around, and now they're going to find out."

**B. From September 7 through September 29, Pokorny threatened to kill the Mayor of Oakland, California**

From September 7 through September 21, 2025, Pokorny made numerous, racist threats to kill the Mayor of Oakland, California.  The threats were once again sent from the email address dbpokorny@gmail.com, and were sent an email address associated with the mayor's office.  The first email sent on September 7, 2025 read:

> I want all of the niggers in Oakland killed. They're an unhealthy pest. If you want to keep the niggers in Oakland alive, then I want you killed, too. The niggers in Oakland and the people that want to keep them alive are enemy combatants, and I have a legal right to kill them. It is 100% legal to kill the niggers in Oakland. Why is this? Because people have declared war on Oakland. People have declared a genocidal war against the niggers in Oakland. People have decided to commit genocide against the niggers in Oakland. Killing the niggers in Oakland is important. I think we should kill all of the government officials in Oakland and all of the police officers and judges in Oakland as well. I would like to play a video game about killing the police officers judges and niggers in Oakland.

On September 21, 2025, Pokorny sent another email to the same email address, threatening to

kill Victim 1, reading:

> I want [Victim 1] murdered. I'm willing to reconsider if he hands me $250 million, makes it legal, and makes it look good. I'll give you a million or two, but you have to help me torture [Victim 1] and break his will to live. [Victim 1] has to tell people that he's giving me the money because he wants to give me the money, I'm not coercing him (I am, [Victim 1] is lying) and it is a matter of his voluntary and free will that he's giving me the money (I'm coercing him). If you don't do anything, then you don't get anything. I'm willing to reward you if you help me torture and murder my first victim, [Victim 1]. We convince [Victim 1] that we can murder him, that we're going to murder him, and then we coerce him into claiming that he has voluntary will, that we aren't coercing him, and that he wants to give me $250 million. Like I said, l'll give you a million or two, but you have to demonstrate cruelty. You have to use [Victim 1] to demonstrate to me that you know what cruelty and torture are. For example, we could use electric current to fuck his heart up and make him afraid that we'll give him an electronically induced heart attack. The pain and fear of a heart attack is torture, I think. I'd say it's a Taoist or qigong form of torture.

On September 24, 2025, Pokorny sent yet another threatening email to the mayor's office, reading:

> It is right to murder communists and socialists because they abuse children. This is why the Czech government banned communism after David Kozák murdered communists at Charles University in ce Prague, Czech Republic. Wikipedia won't even record the fact that the victims were communists. Polic refuse to confirm that Mr. Kozák targeted and murdered communist academics. Nevertheless, the fac that Mr. Kozák committed mass murder against communists, and two years later, the Czech republic banned communism . . . Murdering communists and socialist because they abuse children is the pest control operation of our time. When we murder communists a socialists, the news media suppress news of it because they support committing genocide against the communists and socialists. The mass murder of communists and socialist in the Czech Republic and subsequent ban on communism are proof that murder communists and socialists is an effective strategy the government responds well when communists and socialists are murdered."

On or about October 6, 2025, Pokorny was arrested by law enforcement on a Ramay warrant arising from the threats against the Mayor of Oakland. When Pokorny was arrested, he was residing at a hotel in San Diego, California. Based on a review of Pokorny's emails, he has been residing at that hotel since at least August 24, 2025. According to an interview with an employee of the hotel, at about the time he was arrested, Pokorny had a check out date of October 21, 2025.

On October 10, 2025, the Alameda County District Attorney charged Pokorny with a violation of

CPC 76(a) – Threatening State Officials, and included allegations that Pokorny had committed a hate crime.

### C. On October 10, 2025, Pokorny was charged by complaint with threatening to kill a judicial officer

On October 10, 2025, Pokorny was charged with a violation of 18 U.S.C. § 115(a)(1)(B) – Threats Against a Judicial Officer. At the time he was charged with the federal offense, Pokorny was in state custody. On or about November 25, 2025, Pokorny was release was state custody and brought into federal custody on these charges. Pokorny made his initial appearance on November 26, 2025, and the government moved for pretrial detention on the basis of danger to the community and risk of non-appearance. Pokorny's state charges remain pending.

## CRIMINAL HISTORY AND PRIOR CONDUCT

Pokorny has one previous conviction in 2017 for Driving Under the Influence. Also in 2017, Pokorny was arrested for obstruction of a public officer and for refusing to leave a campus. These arrests do not appear to have resulted in convictions. As discussed above, Pokorny is also subject to pending felony charges arising from his threats to the Oakland mayor.

In addition to the arrests and his conviction, Pokorny is subject to a protective order served on him on October 23, 2024. The protective order precludes him from assaulting, threatening, abusing, harassing, following, interfering, or stalking an identified victim. He is also precluded from owning, purchasing, or possessing body armor and possessing and/or purchasing a firearm. This order expires on October 16, 2029.

## ARGUMENT

### I. LEGAL STANDARDS

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate

where defendant is either a flight risk or a danger to the community; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). While a finding that a defendant is a danger to the community must be supported by clear and convincing evidence, 18 U.S.C. § 3142(f), a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

In determining whether pretrial detention is appropriate, the court must consider information regarding the nature and circumstances of the charged offense; the weight of the evidence; the danger posed by the defendant to any person or the community; and the history and characteristics of the defendant. 18 U.S.C. § 3142(g).

## II. POKORNY IS A DANGER TO THE COMMUNITY AND A FLIGHT RISK

The substantial risk that Pokorny will act on his threat or continue to make threats is a severe danger to the community and cannot be mitigated by any conditions. Nor can Pokorny's appearance be assured, given that he has no ties to this district, no apparent permanent address, and a history of failing to follow lawful orders. For both of these reasons, Pokorny must be detained pending trial.

### A. The Nature and Circumstances of the Offense Weigh in Favor of Detention

The nature of Pokorny's offense raises two separate dangers to the community, neither of which can adequately mitigated by conditions of release. First, there is the risk that Pokorny will act on his threats. Given the nature of Pokorny's threats, this risk is severe. Pokorny repeatedly declared himself to be a terrorist. He made specific, graphic threats about how he would kill a United States District Judge. And his threats did not end there. His threats appear to extend to *all* judges in California and all black people and police officers in Oakland. He also suggests that he would work with others to carry out his threat, stating that "*We* are organizing a new California government." Dkt. 1 at X (emphasis added). Pokorny also presented an elaborate justification for his threatened violence, including his supposed right to kill judges because their rulings. Each of these factors shows that Pokorny did not make an idle threat; rather, it was thought out, detailed, and extremely violent. The specific circumstances of the threat suggests a significant risk that Pokorny plans to act on it, posing an extreme risk to the community.

And even if Pokorny did not intend to act on his threat, his release still puts the community at risk because of the likelihood that he will continue to make threats.  First, Pokorny made more than one serious threat in the same week: the September 2, 2025, threat charged in this case and the September 7 through 21, 2025 threat against the Mayor of Oakland, as well as others in the city of Oakland.  Pokorny has been in custody since approximately October 10, 2025, which has prevented him from further threats.  Moreover, the fact that Pokorny threatened a judge for making rulings he disagrees with increases the risk that he will make more threats in the future.  He is now charged with both state and federal felonies and will be appearing in front of state and federal judges frequently.  It is nearly inevitable that at times these judges will make rulings with which he disagrees.  Pokorny's previous reaction to opinions he did not agree with–even when the rulings did not concern him individually–gives us every reasons to believe that he will respond in a similarly violent manner when a judge makes adverse rulings about his case.

### B. Pokorny's Prior Conduct Demonstrate the Danger that He Poses and that He is a Flight Risk

In addition to the threats that have resulted in state and federal charges, Pokorny's history suggests other threatening conduct.  Specifically, on October 23, 2024, the San Diego Sheriff's Office served a protective order that prevents Pokorny from threatening, abusing, harassing, following, interfering, or stalking an individual and his family.  The protective order further prevented Pokorny from possessing firearms and required him to surrender all firearms, and show proof of their surrender to the Court.  While the government is still seeking the details underlying this protective order, its entry and the terms of the protective order strongly suggest that a Court found that Pokorny was engaged in behavior that made him a threat to the safety of the victims protected by that order risk.

Pokorny's criminal history also demonstrates that he is a risk of flight.  Pokorny was arrested in 2017 for obstructing a public officer.  While the government does not have the details underlying this offense, it suggests that Pokorny previously failed to follow the instruction of a peace officer.  Similarly, on a separate date in 2017, Pokorny was arrested for refusing to leave a campus.  Both of these arrests show a propensity to disobey lawful orders.  Both in turn provide a reason to believe that Pokorny will

1    fail to follow the orders of this Court, including orders to appear for hearings.

2            **C.**     **Pokorny's Characteristics Present a Serious Risk of Flight**

3           Pokorny's personal characteristics also suggest a risk of non-appearance.  Pokorny has no known

4    ties to the Norther District of California.  As far as the government is aware, he has most recently lived

5    in the Southern District of California, and has no property, family, or friends in this district.  And even

6    Pokorny's ties to the Southern District of California appear to have been tenuous.  At the time of his

7    arrest, he seems to have been living out of a hotel, and does not appear to have had a permanent address.

8    For both of these reasons, there would be very little that would prevent Pokorny from fleeing from these

9    proceedings, particularly considering that he is facing the potential of significant prison time on these

10   charges, as well as possible incarceration on state charges.

11           **D.**     **The Weight of the Evidence Against Scollay is Overwhelming**

12          Pokorny faces overwhelming evidence that he committed the offense charged.  With respect to

13   proving a threat, the emails he sent speak for themselves.  Nor is there any doubt that Pokorny sent the

14   emails.  Indeed, he did very little to hide his identity.  He sent the threats from the email address

15   "dbpokorny@gmail.com."  The govenrment obtained a search warrant for tha email address, and reviewed

16   other emails sent by the account.  They include emails that are signed "David"–Pokorny's first name.  The

17   email address is also associated with other social media accounts using the name David Pokorny, and

18   displaying Pokorny's picture.  Pokorny also sent numerous emails from that account that attached his

19   picture.  Finally, the IP address used to send the emails was associated with the hotel that Pokorny was

20   staying at on September 2, 2025.  In short, there is no question that the emails contained threats, and no

21   question that they were sent by Pokorny.

22          Nor is there any question that Pokorny sent the threats in retaliation for a judge's performance of

23   his official duties.  Pokorny is absolutely clear that this is his motive in his emails.  He specifically

24   references the rulings of judges, stating that his threatened actions were justified because "judges rule in

25   favor of godless socialists."[2]  The government will therefore be able to satisfy every element.

26   _____

27       [2] Pokorny also sent his threats on the same day that Judge Breyer issued a highly publicized

MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN                                          8

28   4:25-MJ-71222-MAG

While the weight of the evidence factor is the least important, the Court is still "require[d]" to consider it, and it can help to establish the dangerousness of the defendant. *United States* v. *Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant would pose a danger if released). Likewise, overwhelming evidence of the defendant's guilt "makes it more likely that he will flee," since the defendant has less incentive to litigate the case. *United States* v. *Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991). In this case, the overwhelming evidence indicates both that Scollay may flee to avoid certain conviction, as well as the clear and present danger that he poses to the community.

E. **There are no Conditions of Release that will Protect the Community and Assure Pokorny's Appearance**

There is no condition of release, or combination of conditions of release, that will adequately protect the community from the danger that Pokorny will further harm the community and assure his appearance at these proceedings.

First, no condition can protect the community from the danger Pokorny poses. Even if the Court were to place Pokorny on the most severe conditions possible–home lockdown[3] or placement at a halfway house–this could not protect the community. Were Pokorny to leave his home or a half-way house, this would result only in a notification that he had done so. But it would not actually stop Pokorny from leaving. Which means that if Pokorny did intend to carry out his deadly threats, neither of those conditions would stop him from doing so. These restrictions–the most stringent available to the Court short of custody–accordingly fail to protect the community given the extreme nature of Pokorny's threats.

And even if these location restrictions could prevent Pokorny from leaving his residence to carry out his threats, they would still be insufficient because Pokorny could continue to make violent threats from wherever it is he is ordered to reside. Pokorny made his threats via email, which can be accessed

---

opinion in *Newsome v. Trump*, 25-CV-04870-CRB. It is a reasonable inference that this decision is what specifically caused Pokorny to make his threats.

[3] It is not clear that home lockdown is even available as a condition of release, since it is not apparent that Pokorny has any permanent residence.

1   from any computer device and indeed nearly all cell phones.  Even if Pokorny were ordered not to possess
2   a computer or access the internet, it would be trivial for him to do so.  Indeed, even if Pokorny was placed
3   on home lockdown, he could obtain a cell phone without even violating his location monitoring by having
4   somebody bring him a phone.  These hypothetical conditions would therefore not prevent Pokorny from
5   making future threats, and so do not adequately protect the community.  Nor has Pokorny at the time of
6   filing presented any proposed sureties or custodians willing to stand with him, and whose potential liability
7   would present a deterrent to Pokorny committing further offenses.

8           For similar reasons, there are no conditions that will assure Pokorny's appearance at these
9   proceedings.  Various forms of location monitoring are insufficient, since they only provide a notification
10  that Pokorny has left, rather than acting as an actual impediment to his flight.  These sorts of restrictions
11  are particularly imponent in this case, where Pokorny has no ties to the district, and so personal deterrent
12  to prevent his flight from these proceedings.  On this basis, Pokorny must also be detained because he
13  more likely than not presents a risk of flight that cannot be mitigated by conditions of release.

## **CONCLUSION**

15          For the foregoing reasons, the United States respectfully asks the Court to order Pokorny detained.

17  DATED:  December 1, 2025                               Respectfully submitted,

19                                                         CRAIG H. MISSAKIAN
                                                           United States Attorney

21                                                         ____/s/ Evan M. Mateer_____
22                                                         EVAN M. MATEER
                                                           Assistant United States Attorney

27  MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN                    10
28  4:25-MJ-71222-MAG