UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DAVID BROOKS POKORNY, <br><br> Defendant. | Case No. 26-cr-00018-JST-1 <br><br> **ORDER DENYING MOTION TO DISMISS; ORDER DENYING MOTION FOR DISCLOSURE OF GRAND JURY MATERIALS** <br><br> Re: ECF No. 37 |

Before the Court is Defendant David Brooks Pokorny's motion to dismiss the superseding indictment. ECF No. 37. Also before the Court is Pokorny's motion for disclosure of certain grand jury materials. ECF No. 36. The Court denies the motion to dismiss in full and grants the motion for disclosure in part and denies it in part.

## I. BACKGROUND

Dated March 19, 2026, the superseding indictment in this case charges two counts. The first, for influencing a federal official by threat under 18 U.S.C. § 115(a)(1)(B), charges that Pokorny "threaten[ed] to assault and murder Charles R. Breyer, Senior United States District Judge for the Northern District of California, with the intent to impede, intimidate, interfere, and retaliate against [him] on account of the performance of his official duties." ECF No. 32 at 3. The second, for use of interstate communications with a threat to kidnap or injure under 18 U.S.C. § 875(c), charges that Pokorny "knowingly and willfully did transmit in interstate commerce a communication; an email sent to an employee of the Clerk of Court for [this Court], and the communication contained a threat to kidnap and injure [Judge Breyer]." *Id*. at 4.

The complaint in this case, dated October 14, 2025, describes the alleged threats in greater detail. Over the course of about 45 minutes in the morning of September 2, 2025, the media email

address for this Court received the following messages from dbpokorny@gmail.com:

> 11:22 a.m.: "This is terrorism."
> 11:29 a.m.: "this is terrorism reply to this email."
> 11:30 a.m.: "this is terrorism. Reply to this message or else."
> 11:31 a.m.: "This is terrorism. I'm going to take a hostage. Reply to this message or else. I'm going to take a hostage. Reply to my message or else. I'm going to kill a hostage because you aren't responding to terrorism."
> 11:32 a.m.: "This is terrorism reply to message or I kill a hostage."
> 11:50 a.m.: "I want you to visualize skinning US District Judge Charles Breyer to death."
> 11:50 a.m.: "I want to talk about a concrete plan to use terrorism to control California courts & judges. This plan involves taking & killing hostages. We have a legal right to do this because California courts & judges rule in favor of godless socialists. As a result, California courts are illegitimate and no longer rule on legal matters; rather, they are commanders of enemy forces and do not rule on matters of justice but rather abuse their power to issue commands to military forces. This is the behavior of commanders of military forces, not courts of justice. They seek war, not justice. We have a legal right to use terrorism to control California courts & judges. It is legal to take & kill hostages in order to get the illegitimate California courts & judges to cease their operations and dissolve their courts. California courts are valid military targets. California judges are enemy combatants. US District Judge Charles Breyer is an enemy combatant. This judge should not have turned traitor. This judge did something very stupid, and that is to militarize the court. This judge turned himself into an enemy combatant. You know what? That's suicidal. Ever heard of 'suicide by cop?' Well, this is suicide by the American people, suicide by USA. It was a huge mistake for godless socialist California judges to turn the California courts into legitimate military targets. The tree of liberty must be refreshed from time to time with the blood of patriots and tyrants. You are traitors and godless socialists, and I'm happy to spill your blood. Moreover, your hatred of the USA and your attack on the USA gives me a legal right to spill your blood because you've initiated military hostilities against the USA. I have a legal right to spill your blood. The California courts are failing, and people are going to turn to criminals & terrorists to kill judges & police officers in large numbers. I am a terrorist, and I'm happy to spill your blood. Spilling the blood of tyrants like you feels good. It feels real good :-)."
> 11:52 a.m.: "Reply to this message or we skin US District Judge Charles Breyer. We'll skin him, take pictures, and send you the pictures."
> 11:53 a.m.: "I want you to visualize skinning US District Judge Charles Breyer."
> 11:55 a.m.: "I have a legal right to skin US District Judge Charles Breyer. This is because the California courts are no longer legitimate and have turned themselves into legitimate military targets. It is legal according to the rules of war to capture enemy combatants & skin them. It is legal to use terror to control the California courts."
> 12:07 [p].m.: "California judges & police officers are enemy combatants. Use terror to make it easy to kill them. California judges & police officers are targeting Christians. It is legal to use terror to

kill these enemy combatants. Killing California judges & police officers is a just cause (casus belli). We are organizing a new California government. The mass killing of the godless socialist police officers & judges will continue until they have been pacified and obey us and the Will of God. The California judges & police officers fucked around, and now they're going to find out."

ECF No. 1 ¶¶ 8–19.  Approximately forty-five minutes after the final email, the United States Marshals Service received a report from the clerk's office about the "concerning emails" it had received.  *Id*. ¶ 7.  According to the U.S. Marshals' investigation, the emails were sent from Brisa Pacific Hotel in Encinitas, California.  *Id*. ¶¶ 27-28, 30.

On April 10, 2026, Pokorny filed three motions, two of which the Court resolves in this order.  The first seeks dismissal of the superseding indictment on the grounds that Pokorny's emails are protected by the First Amendment or, in the alternative, an order compelling the government to identify the true threats on which it may constitutionally proceed.  ECF No. 37 at 5.  The second seeks disclosure of the evidence and legal instructions on the charged threat instructions presented to the grand jury.  ECF No. 36 at 1.  The Court heard oral argument on both motions on May 8, 2026.

## II.    MOTION TO DISMISS

### A.    Legal Standard

Only limited categories of speech are exempt from the protections of the First Amendment, including "true threats," which are "serious expression[s] of an intent to commit an act of unlawful violence to a particular individual or group of individuals."  *Virginia v. Black*, 538 U.S. 343, 359 (2003).  Because the prohibition is intended to protect individuals not only from violence but from the fear of violence and "the disruption that fear engenders," "[t]he speaker need not actually intend to carry out the threat."  *Id*. at 359–60.  "True threats" are distinguished from "jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow."  *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (quoting *Watts v. United States*, 394 U.S. 705, 708 (1969)).  Protected speech "'may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials'" and may be "vituperative, abusive, and inexact."  *Id*. (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

To identify a true threat, the Ninth Circuit applies a test with both objective and subjective components. The objective test looks at "the entire factual context of [the] statements including: the surrounding events, the listeners' reaction, and whether the words are conditional" to determine whether the statements "would be interpreted by those to whom the maker communicates [them] as a serious expression of an intention to inflict bodily harm on or to take the life of" another. *United States v. Bagdasarian*, 652 F.3d 1113, 1119 (9th Cir. 2011); *see also Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1074–75 (9th Cir. 2002), as amended (July 10, 2002) (citing *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990)). "It is not necessary that the defendant intend to, or be able to carry out his threat." *Id*. at 1075.

The subjective component of the "true threat" test was most recently refined by the Supreme Court in *Counterman v. Colorado*, 600 U.S. 66 (2023). Although "[t]he existence of a threat depends not on 'the mental state of the author,' but on 'what the statement conveys' to the person on the receiving end," the Court held that the First Amendment nonetheless precludes liability unless the government shows that the author's mental state was at least reckless. *Id*. at 74–75 (quoting *Elonis v. United States*, 575 U.S. 723, 733 (2015)); *id*. at 80. This requirement shields some true threats from liability to avoid chilling protected speech. *Id*. at 75, 78. "The State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id*. at 69.

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "To dismiss . . . the indictment as a matter of law" under the First Amendment, however, "the court must conclude that no reasonable jury could find that the alleged communications constitute true threats." *United States v. Toltzis*, No. 14-CR-00567-RMW, 2016 WL 3479084, at *3 (N.D. Cal. June 27, 2016) (citing *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013)); *see also Fogel v. Grass Valley Police Dep't*, 415 F. Supp. 2d 1084, 1088 (E.D. Cal. 2006), *aff'd on other grounds sub nom. Fogel v. Collins*, 531 F.3d 824 (9th Cir. 2008) ("Except in a circumstance[s] in which the statement is only fairly susceptible of one characterization—true threat v. political hyperbole—whether a

statement constitutes a 'true threat' is a question of fact for the jury, not a question of law for the court." (citing *Melugin v. Hames,* 38 F.3d 1478, 1485 (9th Cir. 1994))).

### B.    Discussion

Pokorny argues that, as a matter of law, his threats against Judge Breyer do not rise to the level of "true threats" subject to criminal liability. He does not challenge the government's ability to establish his reckless mens rea, addressing only the objective component of the test.[1] The Court concludes that Pokorny has failed to show that his emails are protected by the First Amendment as a matter of law.

The content of Pokorny's emails inarguably conveys a threat of violence and not merely a hyperbolic or emotionally charged political message. For instance, Pokorny repeatedly described his own emails as constituting an act of terrorism, writing in six separate messages that "this is terrorism" and that he intended "to use terrorism to control California courts & judges." ECF No. 1 ¶¶ 9–13, 15; *see Terrorism*, Merriam-Webster's Collegiate Dictionary (11th ed. 2020) (defining terrorism as "the systematic use of terror esp. as a means of coercion"). Because Pokorny's emails expressly stated his objective to instill terror and coerce, they are likely to be "interpreted by those to whom the maker communicates [them] as a serious expression of an intention to inflict" harm. *Bagdasarian*, 652 F.3d at 1119. Relatedly, Pokorny described his emails as encapsulating a "concrete plan," strongly suggesting a serious expression of intent. ECF No. 1 ¶ 15 ("I want to

---

[1] Defendant's reply, but not his opening brief, makes passing mention of the subjective test without providing any argument as to why the test is not met. *See* ECF No. 49 at 7–8. Arguments raised for the first time in a reply brief are deemed waived. *Symbiont Nutrition LLC v. W. Agric. Ins. Co.*, 671 F. Supp. 3d 991, 998 (D. Ariz. 2023). In any event, the test is met. "A person acts recklessly . . . when he 'consciously disregard[s] a substantial [and unjustifiable] risk that the conduct will cause harm to another.'" *Counterman*, 600 U.S. at 79 (quoting *Voisine v. United States*, 579 U.S. 686, 691 (2016)). "In the threats context, it means that a speaker is aware that others could regard his statements as threatening violence and delivers them anyway." *Id.* (citation modified). Applying that standard, a "defendant's subjective intent is a question appropriate for a jury to determine at trial," *United States v. Lipman*, No. 2:23-CR-00491-FLA, 2024 WL 4043810, at *12 n.18 (C.D. Cal. Sept. 4, 2024), unless "the language of the alleged threat is "so facially insufficient that no reasonable jury could find that the language amounted to a true threat," *United States v. Zavalidroga*, 156 F.3d 1241 (9th Cir. 1998). *See also Lipman*, 2024 WL 4043810 at *12 (in a case charging criminal harassment and intimidation, holding that a motion to dismiss must be denied if "a reasonable jury could find, based on the contents and sheer number of communications identified in the indictment, that defendant intended to harass or intimidate K.R., and that she was placed in reasonable fear or suffered substantial harm in the manner prohibited by § 2261A(2) due to defendant's conduct").

talk about a concrete plan to use terrorism to control California courts & judges. . . . [Judge Breyer] is an enemy combatant. . . . That's suicidal. . . . [T]his is suicide by the American people.").

Pokorny also described in specific and graphic terms how the threat would be carried out, repeatedly declaring that he would skin Judge Breyer alive. ECF No. 1 ¶ 14 ("I want you to visualize skinning [Judge Breyer] to death."); *id*. ¶ 16 ("Reply to this message or we skin [Judge Breyer]. We'll skin him, take pictures, and send you the pictures."); *id*. ¶ 18 ("I have a legal right to skin [Judge Breyer]."). Courts have found that such detail weighs in favor of finding a threat to be a true threat rather than a hyperbolic political statement. *See United States v. Weiss*, No. 20-10283, 2021 WL 6116629, at *2 (9th Cir. Dec. 27, 2021) (unpublished) (holding that a threat is more likely to be believed when it describes "when and how the threat would be carried out" (citing *Black*, 538 U.S. at 360)).

In reply, Pokorny contends that "[s]kinning simply is not a realistic, believable way of killing someone," but is "an expression of fantastical political vitriol." ECF No. 49 at 5. The argument is not persuasive. That skinning is empirically rare, as Pokorny argues, does not mean that a threat to inflict it is unbelievable, and Pokorny identifies no social or political history that might lead a reasonable observer to understand a skinning threat as purely hyperbolic. *Id*.

Other features of the content and form of Pokorny's messages also support finding them to be a true threat. That he sent eleven repetitive messages over the course of 45 minutes is more consistent with an intent to intimidate than to convey a political message. A single missive would as effectively have elicited shock or punctuated a political point. While it may be true that more time between messages would have suggested greater deliberation and therefore a more serious threat, ECF No. 49 at 6, Pokorny may have simply completed any internal deliberation before sending the first email. And in any case, evidence of premeditation, deliberation, or thoughtfulness is not a precondition to a true threat.

Pokorny's messages also described exactly *why* he believed he was entitled to kill Judge Breyer and others: because "California judges & police officers are targeting Christians. It is legal to use terror to kill these enemy combatants. Killing California judges & police officers is a just

6

United States District Court
Northern District of California

cause . . . . The mass killing of the godless socialist police officers & judges will continue until they have been pacified and obey us and the Will of God." ECF No. 1 ¶ 19; *see United States v. Vaksman*, 472 F. App'x 447, 448 (9th Cir. 2012) (unpublished) (upholding jury's true-threat finding based on statement that "[i]f I were to murder [Commissioner Eisenberg], I'd have a legitimate claim that I was merely acting in self-defense" and that Commissioner Eisenberg "will merit every bullet that can be fired into his criminal ass"). He also employed threatening rhetoric apparently unrelated to the central political message, including that "[t]he California judges & police officers fucked around, and now they're going to find out." *Id*. While these features individually or in other contexts may not counsel in favor of a true threat, under these circumstances they reinforce the threatening effect of the emails.

Additionally, the "listener's reaction" supports finding Pokorny's emails to be a true threat. *Bagdasarian*, 652 F.3d at 1119. The clerk's office employee who received these messages immediately[2] notified the United States Marshals Service, which is responsible for judicial security. ECF No. 44 at 11; *see Weiss*, 2021 WL 6116629, at *2 (holding that "Senator McConnell's staff reporting the statement to law enforcement as a "threat[ ]" counselled in favor of finding a true threat); *cf. Fogel v. Collins*, 531 F.3d 824, 832 (9th Cir. 2008) (finding that one officer's initial interpretation of the message as satire and other officers' decision not to follow bomb threat procedures made clear that reasonable people did not understand the message as a true threat).

Courts may also consider whether a statement is conditional, although that factor is not dispositive because "most threats are conditional." *United States v. Sutcliffe*, 505 F.3d 944, 961 (9th Cir. 2007). Here, Pokorny's statements were more explicit than "most" because they were *not* conditional, nor were they "caveated or hedged in any way." ECF No. 44 at 11.

Pokorny suggests that his emails did not constitute a true threat because it was unlikely that

---

[2] Pokorny argues that the clerk's office did not notify the Marshals service immediately, but an hour and a half after the first email was received and 45 minutes after the last was. ECF No. 49 at 6. Given the realities of a large organization like the court, the possibility that the clerk's office may not have seen the emails just as they came in, and the potential need for internal consultation before notifying the Marshals Service, the Court is not persuaded by this argument.

he would carry them out. Specifically, he argues (1) that the emails were not followed by any further concerning words or actions and (2) that he was hundreds of miles away from Judge Breyer's workplace when the statements were received. ECF No. 37 at 7. There are three issues with Pokorny's location-based argument. First, it is not supported by either authority or common sense. Experience teaches that distances in the hundreds of miles are not an obstacle to someone who is committed to carrying out a threat. And Encinitas is separated by San Francisco by only a very short plane ride or a one-day drive. Second, even if the distance were an obstacle, "[i]t is not necessary that the defendant . . . be able to carry out his threat."[3] *Planned Parenthood*, 290 F.3d at 1075. Third, the recipient of the emails had no way to know that Pokorny was in Encinitas, which fact therefore cannot affect how the emails would reasonably be interpreted. *See Bagdasarian*, 652 F.3d at 1122 (describing facts about the speaker that were unknown to the audience as irrelevant to the objective test). As to the point that Pokorny did not follow up with further words or actions, Pokorny does not explain why this fact is relevant. *See* ECF No. 37 at 7. It appears to the Court that the absence of subsequent threatening conduct would only matter if the emails themselves were insufficient to constitute a threat. Those are not the facts here.

Pokorny also points to the fact that the threats were sent to the Court's media address rather than to any individual email account. ECF No. 37 at 7. Indeed, the Ninth Circuit holds that "a privately communicated threat is generally more likely to be taken seriously than a diffuse public one," although this effect is lessened where the public threat targets a specifically identified individual. *Planned Parenthood*, 290 F.3d at 1086. Public settings may therefore weigh in favor of First Amendment protection. *See Bagdasarian*, 652 F.3d at 1121 (noting that "the financial message board to which [Bagdasarian] posted [the statements] is a non-violent discussion forum that would tend to blunt any perception that statements made there were serious expressions of

[3] Pokorny suggests that *Planned Parenthood*'s rule that the defendant need not be able to carry out his threat is invalid because that opinion preceded *Counterman* and did not apply the subjective component of the true threat test. ECF No. 49 at 8. This argument is misguided. The subjective requirement announced in *Counterman* does not require the defendant intend to carry out his threat. Rather, it requires only that he be reckless as to the possibility that his words will be viewed as a threat. 600 U.S. at 69. His inability to carry out the threat, then, would only be relevant to the extent that the inability is so obvious that no reasonable listener could be threatened.

intended violence"); *see also Toltzis*, 2016 WL 3479084, at *4 (distinguishing *Bagdasarian* because Toltzis mailed letters directly to the homes of the victims, which the court found more threatening). But in sending the emails privately to a court email address, Pokorny did not target a public audience. Rather, the choice of recipient appears more consistent with an attempt to reach Judge Breyer personally despite not knowing his personal email address. The Court's media email address, unlike Judge Breyer's personal email, is one that is publicly available.[4]

Pokorny relies primarily on three cases, but each is readily distinguishable. In *Watts*, the Supreme Court held that an 18-year old civil rights protester engaged in protected speech when he told other young people at a rally that he planned to refuse to report for the draft and that "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." 395 U.S. at 706. His audience laughed. *Id*. at 707. Unlike Pokorny, Watts (1) delivered the message to a crowd at a political rally; (2) in conditional and aspirational terms; (3) in a manner that made clear to his audience that the comment was a joke and political statement, including because it was a single, topical punchline rather than a series of deranged emails.

In *Bagdasarian*, the defendant "ma[de] the following statements on an online message board two weeks before the presidential election: (1) 'Re: Obama fk the n****r, he will have a 50 cal in the head soon' and (2) 'shoot the n**.'" 652 F.3d at 1115. The Court emphasized that these statements, while appalling, "convey[ed] no explicit or implicit threat on the part of Bagdasarian that he himself will kill or injure Obama," but were merely "predictions or exhortations to others." *Id*. at 1119. And although discussion board members responded negatively and one discussion board member alerted the authorities, there was no evidence that these responses were based on their authors' view that Bagdasarian's messages were a threat rather than simply impermissible or offensive. *Id*. at 1121. Here, Pokorny made explicit threats, via targeted emails to the Court, to kill Judge Breyer himself, and those threats were received as such by the clerk's office.

Finally, Pokorny cites *United States v. Turner*, in which the Second Circuit considered a threat conviction based on a blog post that stated that Judge Easterbrook's, Judge Bauer's, and

---

[4] *See* https://cand.uscourts.gov/about-court/media-resources.

Judge Posner's "blood will replenish the tree of liberty," provided detailed information regarding how to locate those three judges, and described past judge killings. 720 F.3d 411, 413 423 (2d Cir. 2013). *Turner*, which upheld the conviction, does not support Pokorny's position.

Although Pokorny's email diatribe undeniably contains political elements, accusing California judges and police officers of being illegitimate "commanders of enemy forces" and "traitors and godless socialists" who target Christians, ECF No. 1 ¶¶ 15, 19, those elements do not salvage his claims. *See McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1222 (9th Cir. 1990), *superseded by rule on other grounds as stated in Harmston v. City & County of San Francisco*, 627 F.3d 1273 (9th Cir. 2010) ("That appellees were engaging in protected expressive activities at the same time and to the same end as the alleged threats of violence does not immunize appellees from liability for the alleged threats. . . Nor does the fact that appellees were politically motivated immunize them from liability if they in fact engaged in threats of violence.")  When a threatening message "goes well beyond the political message" that might have motivated it, it loses First Amendment protection. *Planned Parenthood*, 290 F.3d at 1080.

Pokorny's motion to dismiss the superseding indictment is denied.

## III.    REQUEST FOR SPECIFICATION OF TRUE THREATS

Pokorny requests that if the Court declines to dismiss the indictment, it order the government to identify the true threats on which it may constitutionally proceed. ECF No. 37 at 5, 7.  The opening brief provides virtually no authority or argument in support of this request. *See id*. The government interprets the request as a motion for a bill of particulars, although Pokorny does not appear to agree with that characterization. *See* ECF No. 44 at 8–9; ECF No. 49 at 8.  In reply, Pokorny cites a single case from the Eastern District of Virginia, which provides no reasoning or explanation. *Id*. at 8–9 (citing *United States v. Stinson*, No. 1:25-mj-373, Order, ECF No. 26 (E.D. Va. June 27, 2025)).

Because Pokorny has not justified this request, it is denied.  In addition, the Court notes the following.  First, the full circumstances and context of the emails are relevant to the true threats analysis, so it is proper for the full contents of the emails—including passages not constituting true threats—to be considered in the analysis. *Bagdasarian*, 652 F.3d at 1119 (requiring consideration

of the full factual context of the threats).  Second, because the emails were sent using the same means and at the same time, Pokorny is unlikely to be able to exclude as evidence some emails but not others.  A supplemental brief distinguishing the text constituting true threats from other text therefore does not appear likely to have much utility and in fact may confuse the true threat analysis.

## IV.    DISCLOSURE OF GRAND JURY EVIDENCE AND INSTRUCTIONS

In a separate motion, Pokorny seeks an order requiring the government to disclose the evidence and instructions on the charged threat offenses provided to the grand jury.  ECF No. 36. The Court orders the legal instructions be produced for in camera review and denies the remainder of the motion.

### A.    Legal Standard

The proper functioning of the grand jury depends upon the secrecy of its proceedings, which protects witnesses and grand jurors from undue influence by those under investigation and shields accused but exonerated individuals from public ridicule.  *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218–19 (1979).  Federal Rule of Criminal Procedure 6(e) of therefore prohibits the public disclosure of any "matter occurring before the grand jury," with limited exceptions.  Fed. R. Crim. P. 6(e)(2)(B).  "Matters occurring before the grand jury" under Rule 6(e)(2) include "anything which may reveal what occurred before the grand jury," including "identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Standley v. Dept. of Justice*, 835 F.2d 216, 218 (9th Cir. 1987) (quoting *Fund for Constitutional Gov't. v. National Archives & Records Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981)).

Rule 6(e)(3)(E), however, allows the court to order disclosure of a grand jury matter "preliminarily to or in connection with a judicial proceeding" or "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(i)–(ii).  "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and

that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222.

The defendant must show a "particular need" for disclosure. *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir.1980); *United States v. Pac. Gas & Elec. Co. ("PG&E")*, No. 14-CR-00175-TEH, 2015 WL 3958111, at *2 (N.D. Cal. June 29, 2015); *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983). "Mere unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the 'particular need' required to outweigh the policy of grand jury secrecy." *Ferreboeuf*, 632 F.2d at 835 (internal quotation omitted).

In this circuit, certain "ministerial" grand jury records, primarily relating to the grand jury's empaneling and procedural operation, do not fall within the scope of Rule 6(e). *See In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 779 n.1 (9th Cir. 1982). Such records may be disclosed as long as disclosure does not "run[] afoul of the doctrine of grand jury secrecy." *Id*. at 782. Ministerial records may include orders reflecting the beginning term and extension of the terms of a grand jury, *United States v. Jack*, No. CR S-07-0266 FCD, 2009 WL 435124, at *3 (E.D. Cal. Feb. 20, 2009); orders authorizing grand jury summons, *see In re Special Grand Jury*, 674 F.2d at 781; and the transcript reflecting the court's general instructions to the grand jury when they are impaneled, *see United States v. Alter*, 482 F.2d 1016, 1028–29 n.20 & 21 (9th Cir. 1973).

### B.    Discussion

Pokorny first requests disclosure of the legal instructions provided to the grand jury concerning the charged offenses, arguing that they are "ministerial records" and disclosable without a showing of particularized need. ECF No. 36 at 4. This Court has previously accepted this argument, concluding that "[t]he legal instructions given to the grand jury regarding the charges on which they are deliberating . . . do not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect" and therefore ordering disclosure "even without a showing of particularized need." *United States v. Belton*, No. 14-CR-00030-JST, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015).

Since that time, however, courts have reached mixed conclusions on this issue. *See United*

12

*States v. Garg*, No. CR21-0045-JCC, 2023 WL 168570, at *3 (W.D. Wash. Jan. 12, 2023) ("There is a split of authority as to whether legal instructions provided to the grand jury are simply ministerial in nature, or whether they speak to the substance of the grand jury's deliberation." (citing *PG&E*, 2015 WL 3958111, at *12)).

Observing this split of authority, one court within this district recently noted that "it is possible that legal instructions given to the Grand Jury, if any, were intertwined with the Government's overall presentation." *United States v. Powell*, No. 22-CR-00003-JSW-1, 2024 WL 3052966, at *2 (N.D. Cal. June 18, 2024). That court therefore ordered the government to produce "all records of the legal instructions it gave to the grand jury, including copies of any documents and transcript excerpts containing such instructions and explanations" to it for in camera review. Id. at *3 (quoting *PG&E*, 2015 WL 3958111, at *13). Other courts in this circuit have taken the same approach. *See, e.g.*, *Garg, 2023 WL 168570, at *3* (ordering the government to submit for in camera review within two weeks "all records of the legal instructions it gave to the grand jury"). Now having the benefit of its sibling courts' analysis, the Court finds that the *Garg* court's approach is the most appropriate. The Court therefore orders the government to produce for *in camera* inspection, not later than one week from today's order, the instructions provided to the jury concerning the elements of the two charged offenses.

Pokorny also seeks disclosure of all evidence presented to the grand jury, which is plainly not ministerial. *See United States v. Diaz*, 236 F.R.D. 470, 479 (N.D. Cal. 2006) ("An order that describes or lists the evidence shown to a grand jury is not ministerial, however, because it reveals the substance of matters 'occurring before' the grand jury."). Accordingly, the Court can only grant Pokorny's request on a showing of particularized need—but Pokorny has not made such a showing. His motion argues only that "[t]his prosecution is so imbued with First Amendment concerns that the grand jury's awareness of such delicacy, and its method of distinguishing protected from criminal speech, are relevant and material." ECF No. 36 at 1; *see also id*. at 6. Specifically, he argues that the "barebones" information in the superseding indictment "raise[s] a serious question whether the grand jury that indicted Mr. Pokorny had the factual and legal information necessary to protect his First Amendment rights" and that the indictment's second

charge raises multiplicity and double jeopardy concerns. *Id*. at 3.

These arguments do not suffice. First, Pokorny presents no support for his position that speculative concerns stemming only from the ever-present possibility of constitutional error can justify exposing secret grand jury information. *See Ferreboeuf*, 632 F.2d at 835 (holding that "[m]ere unsubstantiated, speculative assertions of improprieties" do not "outweigh the policy of grand jury secrecy"). Rather, courts authorizing disclosure of substantive grand jury materials look for evidence of actual prosecutorial wrongdoing in securing the indictment. *See PG&E*, 2015 WL 3958111, at *8.

Second, there appears to be no basis in logic for Pokorny's arguments. The Court has rejected Pokorny's claim that his emails are protected by the First Amendment as a matter of law. As long as the emails contain "true threats" not subject to First Amendment protection, it is unclear why the jury's "method of distinguishing protected from criminal speech" would be useful or relevant. The emails were sent via the same means, in quick succession, communicating a uniform message. *See* ECF No. 1 ¶¶ 8–19. Only one count of each offense is charged. ECF No. 32. Even if some of the emails are protected by the First Amendment while others are not, Pokorny has not explained—and the Court does not see—how this could have led to an improper indictment or would otherwise affect his defense.

Pokorny also suggests that the second count, charging him with a violation of 18 U.S.C. § 875(c) for interstate transmission of threatening communication, "raises multiplicity and double jeopardy" concerns. ECF No. 36 at 3. He provides no further explanation. And, as the government argues, no multiplicity or double jeopardy issues are implicated. ECF No. 43 at 5 n.1. There is no multiplicity because "each separately violated statutory provision requires proof of an additional fact which the other does not." *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005) (quoting *United States v. Stearns*, 550 F.2d 1167, 1172 (9th Cir. 1977)). And there is no double jeopardy because Pokorny has not yet been tried at all for either offense and the two offenses are distinct.

For the reasons explained herein, the Court orders *in camera* review of the legal instructions provided to the grand jury and otherwise denies Pokorny's motion for disclosure.

14

United States District Court
Northern District of California

**CONCLUSION**

Pokorny's motion to dismiss, ECF No. 37, is denied in full.  His motion for disclosure of grand jury materials, ECF No. 36, is denied in part and granted in part as stated above.

**IT IS SO ORDERED.**

Dated:  May 8, 2026



_____
JON S. TIGAR
United States District Judge