United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
Plaintiff,
v.
DAVID BROOKS POKORNY,
Defendant.

Case No. 26-cr-00018-JST-1

**ORDER ON SECOND MOTION TO SUPPRESS**

Re: ECF No. 71

Before the Court is Defendant David Brooks Pokorny's second motion to suppress. ECF No. 71. The Court will deny the motion.

## I. BACKGROUND

On December 12, 2025, the Oakland Police Department ("OPD") obtained a state warrant to search two devices: a cell phone seized from Pokorny immediately following his arrest on October 6, 2025, and a laptop seized from his hotel room the same day. ECF No. 71-2 at 10–12, 17–18. The warrant listed Pokorny as the "[t]arget suspect" and listed three statutes related to the transmission of threatening communications as the "[t]arget subject [o]ffense(s)." *Id.* at 10 (listing Cal. Penal Code § 422(A), Cal. Penal Code § 76(a), and Cal. Penal Code § 653M(a)).

Under a heading labeled "Property to be Seized (if checked)," the state warrant listed twelve categories of electronic information. ECF No. 71-2 at 10–11. The first category read: "All electronic communication and device information that constitute evidence and instrumentalities of the above listed crime(s) occurring from the 07/01/2025 to 10/07/2025 referring and/or involving the target of the investigation." *Id.* at 10. That category was unchecked. *Id.* The remaining eleven categories were all checked. *Id.* at 10–11. They authorized officers to search for "[e]lectronic device information that is assigned to the device and/or identify [sic] of the device on

a network," "[e]lectronic information that tends to identify the authorized possessor of the device," "[e]lectronic information that tends to identify associates and/or co-conspirators," "[c]all log" information, "[t]ext messages and text message contents," "[e]mails," "[e]lectronic information that tends to identify Internet history including World Wide Web browser history, bookmarks, favorites, and cookies," "[e]lectronic information that tends to identify location data," "[p]hotographs," "[a]udio and video recordings," and "[v]oicemail messages." *Id.* None of the checked categories contained any language limiting the information to be seized by timeframe or by relation to the crimes under investigation. *See id.*

The state warrant also contained a separate provision under a heading labeled "SPECIAL INSTRUCTIONS." *Id.* at 11. This provision authorized OPD "to search, view, photograph, record, copy, forensic image and conduct forensic analysis of all electronic device information, data, programs and applications on the electronic communication device (s) listed in the Property to be Search section of this search warrant." *Id.*

On March 24, 2026, the government obtained a federal warrant to search the same laptop, as well as the forensic image of the cell phone OPD created pursuant to the "Special Instructions" section of the state warrant. *Id.* at 22–27. The federal warrant authorized agents to search those devices for records created on or after August 2, 2025, related to violations of two threat statutes, 18 U.S.C. § 115(a)(1)(B) and 18 U.S.C. § 875(c). *Id.* at 25. The warrant also authorized agents to search for "[r]ecord[s] and information, including search terms, web addresses, images, videos, chats, other communications, and other digital files, related to the search for, viewing, downloading, or otherwise receiving of Child Sexual Abuse Materials" ("CSAM"). *Id.*

Pokorny now moves to suppress all evidence obtained pursuant to the state and federal warrants. ECF No. 71.

## II. LEGAL STANDARD

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Searches and seizures that offend the Fourth Amendment are unlawful and evidence obtained as a direct or indirect result of such

invasions is considered 'fruit of the poisonous tree' and is inadmissible under the exclusionary rule." *United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013).

## III. DISCUSSION

### A. Timeliness of Pokorny's Second Motion to Suppress

The Court addresses first the government's request to deny Pokorny's second motion to suppress as untimely. ECF No. 77 at 12–13. Pokorny filed his first motion to suppress on April 10, 2026. ECF No. 35. That motion challenged evidence obtained pursuant to three other warrants issued in this case. *Id.* Because the government had not yet provided all the discovery the defense had requested, Pokorny reserved in his motion the right to seek further suppression based on later-provided discovery. *Id.* at 5 n.1. The parties agree that the government did not provide Pokorny with the two warrants challenged here until after he had filed his first motion to suppress. ECF No. 71 at 6; ECF No. 77 at 12.[1]

The parties later stipulated to extend the pretrial-motion deadline to August 21, 2026, ECF No. 75 at 1, the date Pokorny filed the present motion. Because the motion was filed on or before the pretrial motion deadline, it is timely.

### B. State Warrant

Pokorny argues that the state warrant was invalid because it was overbroad and insufficiently particular, ECF No. 71 at 12–13, the magistrate abdicated his duty in reviewing and issuing the warrant, *id.* at 10–12, OPD unreasonably delayed in obtaining the warrant, *id.* at 14–15, and the supporting affidavit misled the magistrate about the scope of previously obtained digital information, *id.* at 16–18. Pokorny asks the Court to suppress all fruits of the state warrant on those grounds. *Id.* at 10.

#### 1. Probable Cause, Overbreadth, and Particularity

"A search warrant . . . is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place . . . ." *Steagald v. United States*, 451

[1] Pokorny says the government disclosed the two warrants, along with other discovery, "[o]n April 14 and 17," ECF No. 71 at 6, while the government says it disclosed both warrants "on April 14," ECF No. 77 at 12.

U.S. 204, 213 (1981); *United States v. King*, 985 F.3d 702, 707 (9th Cir. 2021) ("A warrant must be supported by probable cause—meaning a 'fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of the circumstances.'" (quoting *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007)).

There was probable cause to issue the state warrant. The crimes contemplated by the warrant involved the transmission of threatening communications. ECF No. 71-2 at 10 (citing Cal. Penal Code § 422(A); Cal. Penal Code § 76(a); Cal. Penal Code § 653M(a)). The supporting affidavit explained that the threats under investigation had been sent from the email address dbpokorny@gmail.com and that the subscriber information provided by Google pursuant to an earlier warrant showed that account was associated with an individual whose name, date of birth, home address, and phone number matched Pokorny's. *Id.* at 17. The affidavit further explained that the cell phone was seized from Pokorny immediately following his arrest, while the laptop was seized from Pokorny's hotel room later the same day. *Id.* at 17–18.

Pokorny argues the warrant nonetheless has "a probable-cause problem" because the affidavit, curiously, included repeated references to a crime *not* under investigation: murder. ECF No. 79 at 6; *see* ECF No. 71-2 at 18–19 (referencing "persons involved in murder"). The government responds that these "obvious typographical errors" do not undermine the magistrate's finding of probable cause. ECF No. 77 at 13–14. The Court agrees. Notwithstanding its inapposite (and inexplicable) references to "murder," the affidavit sets out a factual basis sufficient to establish a "fair probability" that Pokorny had sent the threatening communications and that evidence of this offense could be found on the cell phone and laptop seized from him. *See King*, 985 F.3d at 707; *see also United States v. Adjani*, 452 F.3d 1140, 1145–46 (9th Cir. 2006) ("The crime contemplated by the warrant was *transmitting* a threatening communication with intent to extort. To find evidence of extortion, the government would have probable cause to search for and seize instrumentalities likely to have been used to facilitate the transmission." (emphasis in original) (internal citation omitted)).

Warrants supported by probable cause must also "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[T]he Fourth

Amendment's specificity requirement has two aspects: breadth and particularity. As to breadth, a warrant must 'be limited by the probable cause on which the warrant is based.' As to particularity, a warrant must 'clearly state what is sought.'" *United States v. Holcomb*, 183 F.4th 704, 713 (9th Cir. 2026) (quoting *United States v. SDI Future Health Inc.*, 568 F.3d 684, 702 (9th Cir. 2009)). "The purpose of particularizing the items to be seized is to [e]nsure that when the warrant is executed, nothing is left to the officer's discretion." *United States v. Hart*, 795 F.2d 765, 772 (9th Cir. 1986). Together, the breadth and particularity "requirements protect against 'the principal evil' of general warrants." *Holcomb*, 183 F.4th at 713.

Pokorny argues the state warrant was infirm because the search it authorized was overbroad and insufficiently particular. ECF No. 71 at 12–13. Specifically, he challenges the eleven checked categories under the "Property to be Seized" heading, none of which contained any language limiting the search by timeframe or by reference to the specific criminal offenses under investigation. *Id.*; *see* ECF No. 71-2 at 10. The Court agrees that the "Property to be Seized" search provisions were both overbroad and insufficiently particular. As the Court explained above, the supporting affidavit established probable cause that evidence of the crimes under investigation could be found on Pokorny's devices. The search those provisions of the warrant authorized, however, was largely untethered from the probable cause the supporting affidavit established. The warrant authorized officers to search for and seize remarkably broad categories of digital information, including "[e]lectronic information that tends to identify associates and/or co-conspirators," "[t]ext messages and text message contents," "[e]lectronic information that tends to identify Internet history," "[p]hotographs," "[a]udio and videos [sic] recordings," and "[v]oicemail messages." ECF No. 71-2 at 10–11. Although the supporting affidavit made clear that the investigation concerned a discrete set of emails sent during a specific timeframe from a single email account, *id.* at 17–18, none of the checked categories contained any temporal limitation or any requirement that the evidence sought be related to the identified offenses, *id.* at 10–11. Thus, the state warrant effectively authorized OPD "to open and examine any file from any time period, including files that long predated the alleged [crimes]." *See Holcomb*, 183 F.4th at 714. The absence of any meaningful restriction on the discretion of officers

United States District Court
Northern District of California

executing these provisions "transformed the [state] warrant into a general warrant." *See id.* at 715.

**2. Severance**

The Court's finding that the "Property to be Seized" search provisions were overbroad and insufficiently particular does not, however, mean that all fruits of the state warrant must be suppressed. The government maintains that "the *only* fruit of the state warrant" it possesses is the forensic image of the phone created pursuant to the state warrant's separate "Special Instructions" section. ECF No. 77 at 14 (emphasis in original). In other words, the government represents that it does not seek to use any evidence that OPD obtained during its search of the devices pursuant to the invalid search provisions. *Id.* Pokorny, for his part, has indicated he believes OPD gave the government "not only the 'cell phone extraction' but also a 'cell phone report.'" ECF No. 79 at 12.

The Ninth Circuit "has embraced the doctrine of severance, which allows [courts] to strike from a warrant those portions that are invalid and preserve those portions that satisfy the [F]ourth [A]mendment. Only those articles seized pursuant to the invalid portions need be suppressed." *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984); *see also United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir. 1986) ("In this circuit we follow the rule that where invalid portions of a warrant may be stricken and the remaining portions held valid, seizures pursuant to the valid portions will be sustained."). Pokorny does not argue that the state warrant's "Special Instructions" section was overbroad or insufficiently particular. *See* ECF No. 71 at 13.[2] The Court concludes, therefore, that the "Special Instructions" section, and the forensic image of the cell phone made pursuant to it, can be severed from the warrant's "Property to be Seized" provisions. Accordingly, the Court declines to suppress the forensic image as a fruit of the state

[2] In his reply, Pokorny suggests that the "Special Instructions" section lacks probable cause given the affidavit's references to "persons involved in murder." ECF No. 79 at 6–7. The Court has already concluded that, despite these errors, the affidavit established sufficient probable cause to believe evidence of the crimes under investigation could be found on the cell phone seized from Pokorny. Moreover, forensic images are, by definition, designed to seize the contents of the device, in their entirety, for search at a later time pursuant to particularized search-warrant provisions. The time-unlimited "Special Instructions" section does not, accordingly, appear to the Court unreasonable. *See Adjani*, 452 F.3d at 1147 ("[T]he level of detail necessary in a warrant is related to the particular circumstances and the nature of the evidence sought.").

warrant's invalid search provisions.

That said, the Court recognizes that the parties do not agree about what fruits of the state warrant are in the government's possession. Should the government ultimately seek to use evidence that either party believes was obtained pursuant to other provisions of the state warrant, the Court can consider those arguments in the context of a motion in limine. *United States v. Taylor*, 2019 WL 281457, at *9 (N.D. Cal. 2019).

**3. Judicial Abandonment**

Pokorny also argues the state warrant is invalid in its entirety because the magistrate abandoned his judicial duties by issuing it. ECF No. 71 at 10–12. Specifically, Pokorny asserts that the fact that the magistrate signed the warrant despite the affidavit's mistaken references to "persons involved in murder" shows the magistrate "failed to review the requisite affidavits or materials prior to making a probable cause determination." ECF No. 71 at 11 (quoting *United States v. Barnes*, 895 F.3d 1194, 1202 (9th Cir. 2018)).

Though "judicial abandonment" largely arises as an exception to the exclusionary rule's good-faith exception, *see United States v. Leon*, 468 U.S. 897, 914 (1984) (explaining that good-faith exception may be overcome where defendant shows magistrate has failed "to perform his neutral and detached function" (internal quotations omitted)), Pokorny relies on two cases finding judicial abandonment to be an independent basis to invalidate warrants. The first is *United States v. Barnes*, in which the Ninth Circuit found an arrest warrant "inexcusably infirm" because the defendant had shown, by a preponderance of the evidence, that the issuing judge had not read the arresting officer's sworn citation before finding probable cause to issue the warrant. 895 F.3d at 1200–01. The second is *United States v. Decker*, in which the Eighth Circuit suppressed evidence obtained pursuant to a search warrant because the issuing judge had failed to read the warrant before signing it. 956 F.2d 773, 777 (8th Cir. 1992).

Both cases, however, are distinguishable. In *Barnes*, the court found the issuing magistrate had abandoned her judicial duties only after a court employee testified that the magistrate's regular practice was to "make a determination of probable cause based solely on a complaint presented by the prosecutor and without reviewing the citation giving rise to the complaint." 895 F.3d at 1197–

98. In *Decker*, likewise, the Eighth Circuit reached its conclusion that the magistrate had failed read the warrant based, at least in part, on the magistrate's own testimony that he had only "glanced at it" and had "executed [the] search warrant on the strength of what the officer told me." 956 F.2d at 777. Though the court also observed that the warrant contained "glaring" deficiencies—it lacked any list of items to be seized; contained incorrect, boilerplate references to "unlawfully stolen" property; and was not signed by the prosecutor, as Missouri law required—it found only that these deficiencies "support[ed] the district court's finding that the issuing judge never read [the warrant]," a finding based also on the judge's own admission to that effect. *Id.*

Pokorny has offered no comparable evidence that the magistrate who issued the state warrant failed to read it before doing so. He asks the Court to reach this conclusion based only on the fact that the warrant contained inaccurate references to "murder," but he points to no cases where another court has made such an inference. *See* ECF No. 71 at 12 (arguing that "[a]ny magistrate who had *read* the entire affidavit would have noticed that it offered no reason whatsoever to believe that the alleged owner of the cell phone to be searched was 'involved in murder'" (emphasis in original)). Absent such evidence, and in light of the Court's finding that the state warrant was supported by probable cause notwithstanding these errors, the Court declines to conclude that the issuing magistrate abandoned his judicial duties.

**4. Unreasonable Delay**

Pokorny next argues the fruits of the state warrant must be suppressed because there was an unreasonable delay between when the officers seized his devices and when they applied for the warrant to search them. ECF No. 71 at 14–15. "An unreasonable delay between the seizure of a package and obtaining a search warrant may violate [a] defendant's Fourth Amendment rights. The touchstone is reasonableness." *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). In evaluating whether a delay is reasonable, courts consider "the totality of the circumstances," balancing "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)); *see, e.g.*, *United States v. Mulder*, 889 F.2d 239, 241 (9th Cir. 1989) (finding two-year delay reasonable where defendant's pills were not

obtained "as the result of an unlawful search," defendant "never made a motion for the return of the pills," and "the time lapse was the result of the judicial appeal process rather than any dilatory tactics").

Officers seized Pokorny's cell phone at the time of his arrest on October 6, 2025. ECF No. 71-2 at 17.[3] They later seized his laptop pursuant to a valid search warrant the same day. *Id.* at 18.[4] OPD first obtained a warrant to search these devices on October 24, 2025, but failed to execute that warrant within the allotted ten-day period. *Id.* (explaining that "the electronic team was unable to full fill [sic] the request within the 10 day period" due to "the high demand of electronic analysis submissions to the Oakland Police Department"). Accordingly, OPD applied for the warrant at issue here on December 12, 2025. ECF No. 71-2 at 20.

The time that elapsed between the seizure of Pokorny's devices and the issuance of the December 12 warrant did not amount to an unreasonable delay. Pokorny remained in continuous custody during this roughly ten-week period. ECF No. 77 at 14. There is no indication that he sought return of his devices, nor could he have received them. *Id.* In other words, he had little possessory interest in the devices. *See Sullivan*, 797 F.3d at 633 ("Where individuals are incarcerated and cannot make use of seized property, their possessory interest in that property is reduced."). Meanwhile, OPD had a legitimate interest in retaining the devices, which it had probable cause to believe contained evidence of the crimes for which Pokorny had been arrested. *See id.* (finding government "had a reasonable basis for retaining" defendant's laptop "based on the likelihood that it contained evidence" of crimes alleged). There is, moreover, no evidence that the delay was the result of dilatory tactics by OPD, which cited resource constraints for its inability to search the phone sooner. ECF No. 71-2 at 18. "Even if the government could have

[3] In his reply, Pokorny notes that he consented to OPD's seizure of his cell phone following his arrest. ECF No. 79 at 8 (explaining that Pokorny "requested that his cell phone and a charging cable be retrieved so they could be booked in with his property" (internal quotations omitted)). Pokorny submits that OPD's continued retention of the phone exceeded the scope of his consent. *Id.* at 8–9. Because Pokorny raises this argument for the first time on reply, the Court declines to consider it.

[4] The Court upheld this search warrant in its order on Pokorny's first motion to suppress. ECF No. 54 at 4–5.

moved faster to obtain a search warrant, the government is not required to pursue 'the least intrusive course of action.'" *Sullivan*, 797 F.3d at 634 (quoting *United States v. Hernandez*, 313 F.3d 1206, 1213 (9th Cir. 2002)). Accordingly, the Court finds OPD did not unreasonably delay in seeking the state warrant.

### ***5. Franks v. Delaware***

Pokorny further argues the state warrant is invalid under *Franks v. Delaware*, 438 U.S. 154 (1978), because the warrant application contained omissions or misrepresentations that undermine the magistrate's finding of probable cause. ECF No. 71 at 13–14. The Court disagrees.

"A *Franks* hearing determines 'the validity of the affidavit underlying a search warrant.'" *United States v. Norris*, 942 F.3d 902, 909 (9th Cir. 2019) (quoting *United States v. Kleinman*, 880 F.3d 1020, 1038 (9th Cir. 2018), *as amended*). "To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that: (1) 'the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant,' and (2) 'the false or misleading statement or omission was material, *i.e.*, necessary to finding probable cause.'" *Norris*, 942 F.3d at 909–10 (quoting *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017)).

Pokorny contends that the affidavit supporting the state warrant misrepresented the scope of digital information OPD had already obtained pursuant to two earlier warrants—namely, a September 8, 2025, federal warrant to Google and an October 1, 2025, state warrant to Verizon. ECF No. 71 at 13–14. As to the September 8 Google warrant, the affidavit stated that Google had provided "subscriber information associated to dbpokorny@gmail.com," including the name, date of birth, address, and phone number of the individual associated with the account. ECF No. 71-2 at 17. Pokorny complains that this description omits that the September 8 warrant also sought "essentially the entire Google account for a one-month period," including "'[t]he contents of all text, audio, and video messages associated with the account,' '[t]he content of all media associated with the account in Google Photos,' and '[a]ll Google Voice records associated with the account, including,' *e.g.*, 'connection records; call details records'; and 'voicemails.'" ECF No. 71 at 14. As to the October 1 Verizon warrant, Pokorny complains that the application noted only that the

warrant sought "call detail records" for the cell phone when, in fact, the warrant also sought "'GPS pings associated with' the cell phone number," as well as "all text-message and voicemail content, email, digital images, contact lists, and websites and applications accessed." ECF No. 71 at 14.

Pokorny has failed to show how either of these omissions—even if intentional or reckless—was "material" to the magistrate's finding of probable cause. *See Norris*, 942 F.3d at 910. On this point, Pokorny asserts only that "[t]he more information these authorities already have obtained through other sources, the less justification for allowing their wholesale exploration of his cell phone." ECF No. 79 at 11. But the question before the magistrate was whether the authorities had demonstrated probable cause to believe evidence of the relevant crimes would be on the devices, not whether that evidence was necessary to their investigation. Pokorny does not argue—much less present evidence showing—that information obtained pursuant to the prior warrants contradicted the affiant's factual account or otherwise undermined his showing of probable cause. In short, nothing about the nature of the information omitted suggests that "the magistrate would not have issued the warrant" were it included. *See Liston v. County of Riverside*, 120 F.3d 965, 974 (9th Cir. 1997). The Court, therefore, concludes Pokorny is not entitled to a *Franks* hearing as to the state warrant.

**C. Federal Warrant**

Pokorny likewise asks the Court to suppress all fruits of the federal warrant. ECF No. 71 at 15–18. He argues the federal warrant itself is a fruit of the state warrant, the government unreasonably delayed in seeking the federal warrant, and the affidavit supporting the federal warrant contained material omissions and misrepresentations. ECF No. 71 at 16–18.

**1. Fruit of the State Warrant**

First, Pokorny contends the federal warrant is a fruit of the state warrant because it authorized agents to search the forensic image of the cell phone made pursuant to the state warrant. ECF No. 71 at 16; *see* ECF No. 71-2 at 23 (authorizing search of "the image of a cellular phone seized from POKORNY on or about October 6, 2025"). Because the Court has found the "Special Instructions" provision of the state warrant that authorized the forensic image to be severable from the warrant's invalid search provisions, it likewise finds that the federal warrant is

not subject to suppression as a fruit of the state warrant.

**2. Unreasonable Delay**

Pokorny next argues the government unreasonably delayed in seeking the federal warrant, which it obtained on March 24, 2026. ECF No. 71 at 16. This argument—like Pokorny's similar argument as to the state warrant—is without merit. First, the Court notes that the relevant delay here is shorter than Pokorny asserts. *See id.* at 16 (describing a "more-than-five-month delay in seeking this warrant"). Though Pokorny begins his calculation with the seizure of the devices in early October 2025, the forensic image of the cell phone was made months later, pursuant to the December 12 state warrant. *See* ECF No. 71-2 at 11. In any event, Pokorny had little possessory interest in the devices during this period. *See Sullivan*, 797 F.3d at 633. Pokorny remained in custody throughout the complained-of delay, did not request return of his devices, and, indeed, would have been unable to receive them. ECF No. 77 at 14. In short, the government's interest in retaining property it had probable cause to believe contained evidence of criminal conduct outweighed Pokorny's diminished possessory interest in that property. *See Sullivan*, 797 F.3d at 633.

***3. Franks***

Lastly, Pokorny contends the federal warrant is invalid under *Franks, supra*. Pokorny first argues that affiant FBI Special Agent Biebesheimer misled the issuing judge by stating in his March 24, 2026, affidavit that there was probable cause to search the devices for CSAM. ECF No. 71 at 16–17; *see* ECF No. 71-2 at 32–33 (asserting "[t]here is probable cause to believe" to devices will contain "evidence, fruits, and instrumentalities of violations of . . . 18 U.S.C. section 2252A(a)(5)(B) – Possession of Child Pornography"). Pokorny insists that Special Agent Biebesheimer knew this statement to be false because Agent Biebesheimer stated in a March 6, 2026, memorandum that it was "remotely possible that the investigation [would] uncover additional federal crimes committed by the defendant, including 18 U.S.C. §2252/Possession of child pornography." ECF No. 71 at 16–17. This argument fails.

As an initial matter, Pokorny has failed to show that Agent Biebesheimer's representation that he believed there was probable cause to search the devices for CSAM was false or misleading.

United States District Court
Northern District of California

*See Norris*, 942 F.3d at 910 (requiring defendant seeking *Franks* hearing to show "the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant" (internal quotations omitted)). In a declaration submitted in response to the present motion, Agent Biebesheimer asserts that he described the likelihood the investigation would uncover evidence of CSAM as "remotely possible" in a document called an "Opening Electronic Communication," which is "an internal FBI memorandum that is submitted to obtain approval to open an investigation." ECF No. 78 at 2. He wrote this document on March 6, 2026, several weeks before he submitted his affidavit in support of the federal warrant. *Id.* According to Biebesheimer, in the time between this case-opening memorandum and his subsequent affidavit, he reviewed the evidence already obtained in the case, including search terms found in Pokorny's Google account that Biebesheimer understood to be consistent with CSAM. *Id.* This investigation led him to "to believe there was probable cause to search Pokorny's devices for evidence of CSAM." *Id.* Pokorny offers the Court no reason to doubt Agent Biebesheimer's account.[5]

Moreover, Pokorny has not shown that Agent Biebesheimer's representation was material to the issuing judge's own probable cause determination. *See Norris*, 942 F.3d at 910 (requiring defendant seeking *Franks* hearing to show "the false or misleading statement or omission was material, *i.e.*, necessary to finding probable cause" (internal quotations omitted)). In addition to Agent Biebesheimer's own assessment, the affidavit laid out specific factual information in support of probable cause. ECF No. 71-2 at 41–42. It explained that evidence obtained pursuant to the September 8 Google warrant indicated that Pokorny had, on various occasions, visited

---

[5] In his reply, Pokorny maintains that Agent Biebesheimer's declaration "raises a new Fourth Amendment issue" because, in Pokorny's view, Biebesheimer's review of the search terms produced pursuant to the September 8 Google warrant qualified as a new "search" that exceeded the scope of the Google warrant "both temporally and substantively." ECF No. 79 at 13. The more reasonable read of Agent Biebesheimer's declaration, however, is that he reviewed the Google search terms previously seized pursuant to the Google warrant. *See* ECF No. 78 at 2 ("I became aware of the specific search terms found on Pokorny's Google account."). This raises no Fourth Amendment problem. *United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir. 1983) ("[O]nce an item . . . has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant.").

URLs containing the terms "galleries-candid-teens" and "kittygfs.com," as well as a site labeled "Jailbait Forum – Amateur Porn." ECF No. 71-2 at 42. Agent Biebesheimer further explained that, based on his training and experience, he believed these sites to be consistent with CSAM. *Id.* Pokorny has not argued that these facts were insufficient on their own to establish probable cause to search the devices for CSAM. *See* ECF No. 71 at 16–17. He has, accordingly, failed to make the preliminary showing required under *Franks*.

Pokorny also argues he is entitled to a *Franks* hearing because Agent Biebesheimer's affidavit misrepresented the scope of prior warrants for Pokorny's digital records. ECF No. 71 at 17–18. First, Pokorny complains that the affidavit "did not tell the magistrate that a state warrant already had been obtained to search the devices, and at least the cell phone had been . . . forensically imaged based on that warrant." *Id.* at 17. He does not, however, make any showing that this omission was material—or even relevant—to the magistrate's finding of probable cause. *See Norris*, 942 F.3d at 910.[6] Second, Pokorny complains that the affidavit "did not disclose to the magistrate the breadth of evidence law enforcement obtained based on the prior warrant for Mr. Pokorny's Google account." ECF No. 71 at 17. Pokorny contends this information was material because the Google-warrant returns did not contain any CSAM images. *Id.* at 18. While the Court recognizes that this information may have been relevant to the magistrate's probable-cause assessment, it cannot conclude that "the magistrate would not have issued the warrant" had it been included. *See Liston*, 120 F.3d at 974. Notably, the Google warrant was limited to a one-month period: August 3, 2025, to September 3, 2025. ECF No. 35-2 at 47. The provision of the federal warrant authorizing agents to search for CSAM was, by contrast, not time limited. ECF No. 71-2 at 52. That the Google warrant yielded no CSAM images from that one-month period does not mean there was no probable cause to believe the devices would contain such evidence from other time periods. Indeed, as the Court previously noted, and as Agent Biebesheimer's affidavit set out in detail, the Google-warrant returns contained search terms indicating that such

---

[6] The Court also notes that at least some of this information is apparent from the warrant application, which reported that the forensic image of the phone to be searched was being stored at OPD. *See* ECF No. 71-2 at 50.

material might be present. ECF No. 71-2 at 42. The Court thus denies Pokorny's request for a *Franks* hearing.

**CONCLUSION**

For the foregoing reasons, Pokorny's second motion to suppress is denied. Should the government ultimately seek to use evidence obtained pursuant to the "Property to be Seized" provisions of the state warrant, the Court will consider the parties' arguments in the context of a motion in limine.

**IT IS SO ORDERED.**

Dated: September 24, 2026

JON S. TIGAR
United States District Judge

United States District Court
Northern District of California